was sold under a decree, and produced only $3,908.46.

The debt of Ashton was............ $9,410 20
He had a right to retain........... 3,452 70

The real amount of Ashton's debt was $5,957 50
Hammond's claim was............. 5,179 05

The amount secured to the executors by Hammond's mortgage was..... $ 778 45

This sum of $778.45 then was, by the terms of the mortgage, to be absolutely paid by Hammond to the executors, whether Ashton became insolvent or not, or whether the land produced more or less than Hammond's claim. Such was his covenant. We therefore think that he could not have had recourse to the executors, even if he had not expressly exonerated them.

But it is said that the estate is not exonerated, although the executors are; and that the estate is liable, as assignor of Ashton's debt, under the equity of the 41st section of the statute of Virginia, of December 13, 1792, (P. & P. Rev. Code, 165,) which compels the distributees to take the specific bonds of purchasers of the personal estate, when sold because perishable; in which case, if the bonds are not good, they are to be made good out of the estate. It is admitted that the present case is not within the letter of the statute, and we think it is not within its spirit; for here the debt of Ashton was voluntarily received in payment. Hammond was not obliged to receive it. We think that General Washington's estate is not bound to make it good, and that the executors may recover from Hammond the difference between Ashton's debt and Hammond's share of the estate.

MORSELL, Circuit Judge, concurred. THRUSTON, Circuit Judge, not having heard the argument, gave no opinion.

A decree was afterwards rendered in conformity with this opinion.

Reversed by the supreme court, in 1843. 1 How. [42 U. S.] 14.

## Case No. 17,237.

### WASHINGTON v. WEBB.

[Cited in Washington v. Fowler, Case No. 17,229. Nowhere reported; opinion not now accessible.]

## Case No. 17,238.

### WASHINGTON v. WHEAT.

[1 Cranch, C. C. 410.] [1]

Circuit Court, District of Columbia. June Term, 1807.

CORPORATE BY-LAW—BURNING BRICKS.

Burning bricks in a clamp is not a violation of a by-law, making it penal to burn bricks in a kiln.

Debt for penalty of one hundred dollars under a by-law of the corporation of 20th September, 1803, for using a brickkiln without license. The evidence was, that Wheat had agreed with one Weeding that Weeding should make and burn fifteen thousand bricks, to be delivered to Wheat, when burnt. That Weeding made the bricks and burnt them in a clamp, and not in a kiln.

THE COURT directed the jury that if they believed the facts to be so, the defendant had committed no offence under the by-law. That it was no offence, under the by-law, to burn bricks in a clamp.

## Case No. 17,239.

### WASHINGTON v. WHEATON.

[1 Cranch, C. C. 318.] [1]

Circuit Court, District of Columbia. June Term, 1806.

CORPORATE BY-LAW—LICENSING OF HACKNEY-COACHES.

The corporation of Washington had authority, under the charter of 1802 (section 7), to pass a by-law to regulate and license hackney-coaches.

Appeal from the judgment of William Thornton, a justice of the peace, in an action of debt for penalty of the by-law, for running hacks without license, contrary to the by-law (chapter 9).

THE COURT instructed the jury that the corporation had a right and power under their charter of 3d May, 1802, § 7 (2 Stat. 197), to make such a by-law, and that it was necessary for the defendant to show an actual license.

WASHINGTON (WHELAN v.). See Case No. 17,503.

WASHINGTON (WHITE v.). See Case No. 17,560.

## Case No. 17,240.

### WASHINGTON v. WILSON.

[2 Cranch, C. C. 153.] [1]

Circuit Court, District of Columbia. Nov. Term, 1818.

PERSONAL PROPERTY—TRANSFER OF LEGAL TITLE—LOSS OF SLAVE—ACTION FOR DAMAGES—EVIDENCE.

1. A bill of sale of personal property is valid, between the parties, to transfer the legal title, although the possession and the beneficial interest remain with the vendor.

2. An action upon the case will lie for the loss of the plaintiff's slave, although the defendant wrongfully and unlawfully acquired and kept possession of the slave.

3. In an action upon the statute of Virginia (pages 192, 374) for carrying away the plaintiff's slave, evidence will not be permitted to be given that the slave had hired himself as a free man to another master of a vessel in a previous voyage.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]